Mark N. Todzo (California Bar No. 168389)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com

Christian Levis (*pro hac vice* forthcoming)
Amanda Fiorilla (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

*Attorneys for Plaintiff Brittany Conditi*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| BRITTANY CONDITI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>INSTAGRAM, LLC, a Delaware limited liability company, and FACEBOOK, INC., a Delaware corporation,<br><br>                    Defendants. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brittany Conditi, individually and on behalf of all others similarly situated, asserts the following against Defendants Instagram, LLC ("Instagram") and Facebook, Inc. ("Facebook") (collectively "Defendants"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## SUMMARY OF ALLEGATIONS

1.      Instagram is a popular social media platform, wholly owned by Facebook, with approximately one billion annual active users.

2.      Instagram's focus as a social media platform is based on allowing users to share photographs and videos with one another. Originally, users were only able to post photographs or videos to their Instagram "Feed," which is a permanent collection of users' content that others can interact with by viewing, commenting, or liking. In August 2016, Instagram launched "Stories," a feature where users can post photographs or videos that disappear from view within a 24-hour period.

3.      As a social media platform that allows users to post photographs and videos, Instagram has access to a user's smartphone camera for the limited purpose of allowing users to directly take a photograph or video and then post that content to its platform.

4.      Instagram claims to only access users' smartphone cameras with user permission, such as when a user is interacting with the Instagram application's (also referred to as an "app") camera feature.

5.      For example, Instagram recently released a statement saying "[Instagram] only access[es] your camera when you tell us to—for example, when you swipe from Feed to Camera." Instagram claims when its camera feature is not used, it does not access users' smartphone cameras.[1]

6.      However, Instagram does more than it claims. Instagram is constantly accessing users' smartphone camera feature while the app is open and monitors users without permission, i.e.,

_____

[1]      Filipe Esposito, *Instagram Promises to Fix Bug After Being Exposed By Always Accessing the Camera on iOS 14*, 9ᴛᴏ5Mᴀᴄ, (July 25, 2020), https://9to5mac.com/2020/07/25/instagram-promises-to-fix-bug-after-being-exposed-by-always-accessing-the-camera-on-ios-14/.

1   when users are not interacting with Instagram's camera feature.

2      7.   This access goes beyond the services that Instagram promises to provide. Instagram

3   has no legitimate reason for accessing users' smartphone cameras when they are not using the

4   Instagram camera feature.

5      8.   By doing so, Defendants have been able to monitor users' most intimate moments,

6   including those in the privacy of their own homes, in addition to collecting valuable insight and

7   market research on its users.

8      9.   Defendants engage in this conduct for one main reason: to collect lucrative and

9   valuable data on its users that it would not otherwise have access to. By obtaining extremely private

10  and intimate personal data on their users, including in the privacy of their own homes, Defendants

11  are able to increase their advertising revenue by targeting users more than ever before. For example,

12  Defendants are able to see in-real time how users respond to advertisements on Instagram, providing

13  extremely valuable information to its advertisers.

14     10.  The full extent and scope of Defendants' conduct is only just beginning to come to

15  light as a result of an update to the Apple Inc.'s ("Apple") iPhone operating system, which provides

16  notice to consumers when third parties are accessing their camera and microphone or collecting their

17  data. The update to iPhone's operating system was only made available to developers on June 22,

18  2020, and to the general public on July 9, 2020.

19     11.  Defendants' conduct constitutes an egregious violation of Plaintiff's and Class

20  members' privacy rights, as established through California's privacy laws. In addition, Defendants'

21  actions constitute violations of the common law as well as several state and federal laws.

22                          **JURISDICTION AND VENUE**

23     12.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C

24  § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest

25  and costs, there are more than 100 putative class members, and minimal diversity exists because a

26  significant portion of putative class members are citizens of a state different from the citizenship of

27  Defendants.

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

13.     This Court has general personal jurisdiction over Defendants because their principal place of business is in California. Additionally, Defendants are subject to specific personal jurisdiction in California because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in California.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District. Furthermore, Defendants Instagram, LLC and Facebook, Inc. are headquartered in this District and subject to personal jurisdiction in this District.

15.     **Intra-district Assignment (L.R. 3-2(c) and (e) and 3-5(b))**:  This action arises in San Mateo County, in that a substantial part of the events which give rise to the claims asserted herein occurred in San Mateo County. Pursuant to L.R. 3-2(e), all civil actions that arise in San Mateo County shall be assigned to either the San Francisco Division or Oakland Division.

## PARTIES

### A.     Plaintiff

16.     Plaintiff Brittany Conditi ("Plaintiff") is a natural person and citizen of the State of New Jersey and a resident of Bergen County.

17.     Plaintiff downloaded the Instagram application to her smartphone and regularly uses Instagram, including during intimate moments in private places. For example, on a routine basis Plaintiff uses her smartphone and the Instagram app while she is in her bedroom.

18.     Without her consent, Instagram secretly accessed Plaintiff's smartphone camera and monitored Plaintiff—beyond the scope of any of the services that Instagram provides and while the Instagram camera feature was not in use—including in the privacy of her own home.

### B.     Defendants

19.     Defendant Instagram, LLC is a limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business located at 1601 Willow Road, Menlo Park, CA 94025.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

20.     Defendant Facebook, Inc. is the parent company of Instagram, LLC. Defendant Facebook, Inc. is a corporation, incorporated and existing under the laws of the State of Delaware, with its principal place of business located at 1601 Willow Road, Menlo Park, California 94025.

21.     Defendant Instagram is a wholly owned subsidiary of Defendant Facebook, Inc. Instagram is considered a "Facebook Product" and is provided to users "[b]y Facebook, Inc."[2] Both Instagram and Facebook "share technology, systems, insights, and information-including information [they] have about [users]."[3]

## FACTUAL BACKGROUND

### I.     The History of Facebook and Instagram

22.     Facebook which was founded in 2004 by Mark Zuckerberg, Eduardo Saverin, Dustin Moskovitz, and Chris Hughes, first began as a new social media platform directed towards college students. By the end of the following year, Facebook had amassed over six million users.

23.     In 2006, Facebook expanded its membership from college students to anyone over the age of thirteen. Four years later, Facebook had not only surpassed "Myspace" as the most popular and most visited, social media platform, but it had also accomplished the difficult task of having over 400 million active users. To date, Facebook reports over 2.6 billion active users.

24.     Facebook's rise to becoming the most popular social media platform in the United States was no small feat. During the process, and to maintain its dominance in the market, Facebook acquired several other social media platforms and other apps to boost its portfolio. Some of Facebook's most popular acquisitions have included "WhatsApp" and "Instagram."

25.     Instagram was launched as a social media platform in 2010 by Kevin Systrom. On the day the app launched it was downloaded over 25,000 times. A few short months later, Instagram surpassed one million active users. To date, Instagram has over one billion active annual users.

---

[2]     *Terms of Use*, INSTAGRAM, https://help.instagram.com/581066165581870 (last visited July 30, 2020).

[3]     *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

26.     Due to Instagram's ever-increasing user base, Instagram began to garner attention from larger technology companies, such as Facebook, Twitter, and Benchmark Capital. After denying an offer to be bought-out by Twitter, Facebook eventually acquired Instagram for one billion dollars in 2012.

27.     Instagram has become a large part of Facebook's overall revenue stream. For example, in 2019, Instagram brought in over $20 billion in advertising revenue, accounting for more than a quarter of Facebook's total revenue that year.

28.     With access to so many users, Defendants have claimed to value full transparency and to respect user's privacy. For example, Mark Zuckerberg claimed in an open letter while "Facebook and Instagram have helped people connect with friends, communities, and interests . . . people increasingly also want to connect privately."[4]

29.     To that end, Mark Zuckerberg promised to build a "privacy-focused platform" and claimed to have "worked hard to build privacy into all our products, including those for public sharing."[5] These empty promises have not been fulfilled.

30.     As alleged herein, Defendants took advantage of Plaintiff and Class members by secretly accessing their smartphone cameras to monitor users beyond the scope of any services that Defendants agreed to provide, i.e., when users were not interacting with the Instagram camera feature.

31.     As a result, Defendants have been able to secretly spy on users, including Plaintiff and Class members, during intimate moments and in private places, such as their bedroom, to gather lucrative data to increase its advertising revenue.

II.     **Instagram Watches Users Through Their Smartphone Cameras**

32.     On July 25, 2020, reports emerged for the first time that Instagram was secretly

---

[4]     Mark Zuckerberg, *A Privacy-Focused Vision for Social Networking*, FACEBOOK, (Mar. 6, 2019),     https://www.facebook.com/notes/mark-zuckerberg/a-privacy-focused-vision-for-social-networking/10156700570096634/.

[5]     *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1    accessing and spying on users through their smartphone camera without their consent.

2        33.    Users were able to discover that Instagram was secretly monitoring them through a

3    new update to Apple's smartphone operating system.

4        34.    Apple's latest operating system ("iOS") update has been declared a "game-changer"

5    by *Forbes*, specifically because it allows users to see exactly how companies access and use their

6    personal information.[6]

7        35.    Apple released iOS 14 to developers on June 22, 2020, and the general public on July

8    9, 2020. Among other things, the update allows users to see which applications are accessing their

9    camera or microphone, which reportedly "exposed" Instagram's conduct.

10       36.    The update informs users by a green "camera on" indicator that companies, such as

11   Instagram, are monitoring them through their camera. Instagram users were notified by the green

12   "camera on" indicator that Instagram was accessing, and monitoring them through, their cameras

13   while they were not using Instagram's camera feature and for reasons beyond any "service" that

14   Instagram claims to provide.

15       37.    Instagram is not the only company who has been caught spying on users as a result

16   of Apple's latest update. TikTok, LinkedIn, and Reddit all face scrutiny for copying user's clipboard

17   information after Apple began providing similar notifications whenever this occurred.

18       38.    In a statement, Instagram claimed to "only access your camera when you tell us to—

19   for example when you swipe from Feed to Camera."[7] Instagram's data policy provides similar

20   assurances about the services it does, and does not, provide, and when it collects information and

21   data.

22       39.    Instagram's data policy states that it can collect information, such as "what you see

23

24   ───────────────────────

     [6]    Davey Winder*, Apple iOS 14 Exposes Microsoft's LinkedIn App Reading Clipboard Data*,
25   Forbes, (July 4, 2020), https://www.forbes.com/sites/daveywinder/2020/07/04/apple-ios-14-
     catches-microsofts-linkedin-spying-on-clipboard-tiktok-apps-privacy-iphone-ipad-
26   macbook/#10c5380f5896.

27   [7]    Kim Lyons, *An Instagram bug showed a 'camera on' indicator for iOIS 14 devices even
     when users weren't taking photos*, The Verge, (July 25, 2020),
28   https://www.theverge.com/2020/7/25/21338151/instagram-bug-camera-privacy-ios14-apple.

through features we provide, such as our camera, so [Instagram] can do things like suggest masks and filters that you might like, or give you tips on using camera formats."[8] Instagram discloses that it collects "information about how you use features like our camera."[9]

40.     However, nowhere in Instagram's data policy does it disclose that, when users are <u>not</u> using its camera feature, Instagram is secretly accessing users' smartphone camera to monitor individuals, such as Plaintiff. This is beyond the scope of services that Instagram provides and Instagram has no legitimate reason to access users' smartphone cameras while they are not interacting with Instagram's camera feature.

41.     Instagram's conduct in secretly monitoring users constitutes an egregious violation of their privacy rights, especially because many users, including Plaintiff, were monitored in the privacy of their own home.

42.     Defendants abused their ability to access users' smartphone cameras, and committed egregious privacy violations, for one specific reason: to increase their advertising revenue. By obtaining extremely private and intimate personal data on their users, including in the privacy of their own home, Defendants are able to target users more than ever before.

43.     Facebook has acknowledged the impact that Apple's update to its operating system will pose to its potential advertising revenue, which it earns through its extensive data collection. Since Apple began rolling out its latest operating system update, which gives users unprecedented control over their own data, Facebook has begun meeting with its most notable advertising partners to discuss its potential repercussions.

44.     Apple's Chief Financial Officer, David Wehner, told *CNBC* that it believes Apple's update will "make it harder for app developers and others to grow ads on Facebook and

---

[8]     *Data Policy*, INSTAGRAM, https://help.instagram.com/519522125107875?helpref=page_content (last visited July 30, 2020).
[9]     *Id.*

elsewhere."[10] Considering that Instagram's advertising revenue constitutes a significant part of Facebook's overall revenue, it's not surprising the lengths they would go in pursuit of obtaining users' data for advertising purposes, regardless of the privacy violations they commit in the process.

**III.    Instagram Does Not Obtain Consent or Disclose That it Monitors Users**

45.     Instagram does not obtain users' consent to access their smartphone cameras while users are not interacting with Instagram's camera feature.

46.     Nowhere in Instagram's data policy does it disclose that it (1) accesses users' smartphone camera while the Instagram camera feature is not in use; or (2) obtain consent to do so.

47.     Nor could it. Instagram has no legitimate purpose for accessing users' smartphone cameras while they are not using Instagram's services, i.e., accessing Instagram's camera feature. Since this is not a part of any services that Instagram provides, and Instagram claims to "only access your camera when you tell us to," users could in no way consent to this conduct.

48.     Rather, Instagram has claimed this was simply a "mistake" because of "a bug in iOS 14 Beta that [ ] indicates that some people are using the camera when they aren't."[11]  iOS is Apple's proprietary operating system. Apple has not acknowledged that there is any "bug" in its software that would affect the operation of Instagram.

49.     Tellingly, Facebook came under similar scrutiny for also accessing users' smartphone cameras last year. Users reported that the camera for "Facebook Stories," similar to Instagram Stories, would open in the background while they were watching videos or viewing pictures on Facebook.

50.     Similar to Instagram, Facebook claimed this was a "bug" and entirely inadvertent.[12]

---

[10]    Filipe Esposito, *Facebook raises concerns that iOS 14 could harm its ad business*, 9TO5MAC, (July 30, 2020), https://9to5mac.com/2020/07/30/facebook-raises-concerns-that-ios-14-could-harm-its-ad-business/.

[11]    Kim Lyons, *supra* note 9.

[12]    Jay Peters, *Facebook's iOS app might be opening the camera in the background without your knowledge*, THE VERGE (Nov. 12, 2019), https://www.theverge.com/2019/11/12/20961332/facebooks-ios-app-reportedly-camera-background-security.

Notably, neither company came forward about these "bugs" until after users discovered what they were doing through Apple's update to its operating system.

51.    As Instagram denies that it monitors users while its camera function is not in use, this is not listed as one of the services Instagram promises to provide its users nor is it listed as one of the ways Instagram collects user data.

52.    Similarly, since Instagram does not disclose this practice, there is no way for users to provide consent to be monitored through their smartphone camera while they are not engaging with Instagram's camera function.

**IV.    Instagram's Conduct Violates the California Consumer Privacy Act**

53.    The California Consumer Privacy Act ("CCPA") protects consumers' personal information from collection and use by businesses without providing proper notice and obtaining consent.

54.    Instagram and Facebook are required to comply with the CCPA because they individually earn more than $25 million in annual gross revenue. Additionally, the CCPA applies to Defendants because they buy, sell, receive, or share, for commercial purposes, the personal information of more than 50,000 consumers, households, or devices.

55.    The CCPA requires that a business who collects consumer's personal information, such as Defendants, disclose either "at or before the point of collection . . . the categories of personal information to be collected and the purposes for which the categories of personal information shall be used. *See* Cal. Civ Code § 1798.100(b).

56.    Furthermore, "[a] business shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." *See id.*

57.    Defendants violated the CCPA by failing to disclose that it monitors users through their smartphone camera, while it's <u>not</u> in use, to collect personal information. Instagram only

discloses that it collects "information about how you <u>use</u> features like our camera."[13] Since users were not interacting with Instagram's camera feature at the time they were monitored, and Defendants failed to disclose its conduct, Defendants violated the CCPA.

## V.    Instagram Users Have a Reasonable Expectation of Privacy

58.    Plaintiff and Class members have a reasonable expectation of privacy not to be watched and monitored without their permission. This expectation of privacy is deeply enshrined in California's Constitution.

59.    Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, **and privacy**."  Art. I., Sec. 1, Cal. Const.  [Emphasis added].

60.    The phrase "**and privacy**" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11.  Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating in relevant part:

> The right of privacy is the right to be left alone . . . It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.
>
> **Fundamental to our privacy is the ability to control circulation of personal information.** This is essential to social relationships and personal freedom. The proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[14]

(Emphasis added).

61.    Consistent with this language, an abundance of studies examining the collection of consumers' personal data confirms that the surreptitious monitoring of millions of individuals, as

---

[13]    *Data Policy*, Instagram, https://help.instagram.com/519522125107875?helpref=page_content (last visited Aug. 19, 2020).

[14]    Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) at 27.

Instagram has done here, violates expectations of privacy that have been established as general social norms. Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

62.     For example, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[15]

63.     Moreover, according to a study by *Pew Research*, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies. *Pew Research* also found that 85% of Americans are concerned about the personal information social media sites know about them.

64.     Instagram has failed to obtain adequate consent to access users' smartphone camera while users are not interacting with Instagram's camera feature and has chosen to secretly monitor users without their permission. This constitutes a violation of Plaintiff's and Class members' privacy interests, including those explicitly enshrined in the California Constitution.

## VI.     Facebook's and Instagram's Shared History of Privacy Violations

65.     Since its inception in 2004, Facebook's core business model has been monetizing user information. As the Federal Trade Commission ("FTC") noted in a 2019 complaint against Facebook, "substantially all of Facebook's $55.8 billion in 2018 revenues came from advertising."[16] It is therefore no surprise that Facebook's fortune rises only at the expense of its users, as evidenced by Facebook's long history of data abuse and privacy violations.

66.     For example, back in 2007, when Facebook launched "Facebook Beacon," users were unaware that their online activity was tracked, and that the privacy settings originally did not

---

[15]     *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.
[16]     *United States v. Facebook, Inc.*, Case No. 19-cv-2184.

allow users to opt-out. As a result of widespread criticism, Facebook Beacon was eventually shut down.

67.     Just two short years later, Facebook made controversial modifications to its Terms of Service, which allowed Facebook to use anything a user uploaded to its site for any purpose, at any time, even after the user ceased to use Facebook. The Terms of Service also failed to provide anyway for users to completely delete their accounts. Under immense public pressure, Facebook eventually returned to its previous Terms of Service.

68.     In November of 2011, Facebook agreed to settle FTC charges that it repeatedly failed to keep promises concerning user privacy, including claims that Facebook promised users it would not share personal information with advertisers. Jon Leibowitz, Chairman of the FTC, warned "Facebook is obligated to keep the promises about privacy that it makes to its hundreds of millions of users . . . Facebook's innovation does not have to come at the expense of consumer privacy."[17]

69.     The resulting Consent Order prohibited Facebook from misrepresenting the extent to which consumers can control the privacy of their information, the steps that consumers must take to implement such controls, and the extent to which Facebook makes user information accessible to third parties.[18]

70.     But this was not the last time Facebook abused users' data. In 2015, a journalist for *The Guardian* reported that Cambridge Analytica was using data harvested from millions of users' Facebook accounts mostly without user consent.

71.     In 2018, Facebook testified before Congress that Cambridge Analytica may have harvested the data of up to 87 million users in connection with the 2016 election. This led to yet another FTC investigation in 2019 into Facebook's data collection and privacy practices, resulting in a record-breaking five billion dollar settlement.

72.     Acknowledging that Facebook does not "currently have a strong reputation for building privacy protective services," Mark Zuckerberg promised to build a "privacy-focused

---

[17]     *Id.*

[18] Fed. Trade Comm'n., *In re Facebook*, Decision and Order, FTC File No. 092 3184 (Jul. 27, 2012)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

platform" and assured users that it has "worked hard to build privacy into all our products, including those for public sharing."[19]

73.     Despite these promises, Facebook has continued to fail to live up to its promises. In April 2019, a cybersecurity firm found that millions of Facebook records were made public on Amazon's cloud computing server, which were "accessible and downloadable for anyone who could find them online."[20]

74.     Even more significant, Facebook has come under scrutiny for nearly the same exact thing Instagram is alleged to have done here. In November of 2019, *The Verge* reported that "Facebook's iOS app appears to be activating the camera in the background of the app in some situations without a user's knowledge."[21] Like here, Facebook's conduct was only revealed by users with iPhones running a new version of Apple's operating software. Tellingly, Facebook, like Instagram here, claimed that this was merely a "bug" that they would fix.

75.     Instagram has followed a similar path of repeated privacy violations as its parent company. In 2012, shortly after being acquired by Facebook, Instagram announced sweeping changes to its Terms of Service disclosing that "a business or other entity may pay" Instagram for the use of a users' images "without any compensation [to the user]."[22] The changes also allowed Instagram to disclose user data to Facebook and third-party advertisers. Even worse, Instagram proposed that parents of minors implicitly consented to the use of their children's images for

---

[19]     Mark Zuckerberg, *A Privacy-Focused Vision for Social Networking*, FACEBOOK, (Mar. 6, 2019), https://www.facebook.com/notes/mark-zuckerberg/a-privacy-focused-vision-for-social-networking/10156700570096634/.

[20]     Sarah Frier, Matt Day & Josh Eidelson, *Hundreds of Millions of Facebook User Records Exposed on Amazon Cloud Servers*, LA TIMES, (April 3, 2019), https://www.latimes.com/business/la-fi-tn-facebook-user-data-amazon-web-services-privacy-20190403-story.html.

[21]     Jay Peters, *Facebook's iOS app might be opening the camera in the background without your knowledge*, THE VERGE (Nov. 12, 2019), https://www.theverge.com/2019/11/12/20961332/facebooks-ios-app-reportedly-camera-background-security.

[22]     Doug Gross, *Instagram Backtracks After User Privacy Revolt*, CNN (Dec. 19, 2012), https://www.cnn.com/2012/12/18/tech/social-media/instagram-terms-users/index.html.

advertising purposes by posting them to Instagram. Amidst widespread protests and boycotts, Instagram claimed they would withdraw the proposed changes.

76.     In February 2020, reports emerged that Instagram retained users' pictures and private messages on their servers long after users manually deleted them. Even though Instagram claimed that it typically retains pictures and private messages for about 90 days after a user deletes them, in some instances Instagram kept this data for as long as a year. Instagram was alerted to the issue in October 2019 and took nearly *eight months* to resolve the issue.

77.     It is therefore not surprising that Defendants have once again abused its access to users to commit egregious privacy violations by monitoring users through their smartphone cameras, while they are not interacting with the Instagram camera feature, including during intimate and private moments in one's own home.

## TOLLING OF THE STATUTE OF LIMITATIONS

78.     The applicable statutes of limitations have been tolled by Instagram's knowing and active concealment and denial of the facts alleged herein, namely its practice of spying and monitoring users through their smartphone camera, and collecting and otherwise misusing data gathered from Plaintiff's and Class members' private and intimate moments. Plaintiff and Class members could not have reasonably discovered the truth about Instagram's practices until shortly before this class action litigation was commenced.

79.     As alleged in detail herein, Instagram expressly and impliedly assured consumers that it would only collect information about how Plaintiff and Class members "use features like [their] camera."[23] At no point in time did Instagram disclose that it would access and collect information from users through their smartphone camera while it's features are *not* in use. Instagram's public assurances and policies deny that Instagram engages in the practices described herein.

---

[23]     *Data Policy*, INSTAGRAM, https://help.instagram.com/519522125107875?helpref=page_content (last visited Aug. 19, 2020).

14

80.     Furthermore, Plaintiff and Class members have a reasonable expectation of privacy not to be secretly watched and monitored regardless of Instagram's express assurances. This expectation is particularly heightened where, as here, such communication occurs within one's home, which is a zone of privacy uniformly recognized by state and federal privacy laws.

81.     Thus, based on Instagram's representations and Plaintiff's and Class members' expectations of privacy, Plaintiff and Class members would not have been able to uncover the facts underlying their claims prior to the update to Apple's iOS, which was only released to developers on June 22, 2020, and made public on July 9, 2020, that exposed Instagram's practice of spying and monitoring users through their smartphone camera, and collecting and otherwise misusing their data. This is because all relevant facts were in the possession of Instagram who actively concealed their existence.

## CLASS ACTION ALLEGATIONS

82.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All Instagram users whose smartphone cameras were accessed by Instagram without their consent from 2010 through the present (the "Class Period").[24]

83.     Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parent has a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

84.     **Ascertainability:** Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Defendants' records.

---

[24]     Plaintiff has defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period

85. **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through Defendants' records.

86. **Predominant Common Questions:** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

a. Whether Defendants violated Plaintiff's and Class members' privacy rights;

b. Whether Defendants' acts and practices complained of herein amount to egregious breaches of social norms;

c. Whether Defendants' conduct was unlawful;

d. Whether Defendants' conduct was unfair;

e. Whether Defendants' conduct was fraudulent;

f. Whether Plaintiff and Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and,

g. Whether Plaintiff and Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

87. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the proposed Class. Defendants' conduct that gave rise to Plaintiff's claims and the members of the Class is the same for all members of the Class.

88. **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including privacy violations. Plaintiff has no interest that is antagonistic to those of the Class, and Defendants have no defenses unique to any Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

89. **Substantial Benefits:** This class action is appropriate for certification because class

proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

90.     Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

91.     California's substantive laws apply to every member of the Class, regardless of where in the United States the Class member resides.

92.     Instagram's Terms of Service states "[w]hen you create an Instagram account or use Instagram, you agree to these terms." The Terms of Service specifically state that claims "will be resolved exclusively in the U.S. District Court for the Northern District of California . . . You also agree to submit to the personal jurisdiction of [this] court[] for the purpose of litigating any such claim," and "[t]he laws of the State of California, to the extent not preempted by or inconsistent with federal law, will govern these Terms and any claim, without regard to conflict of law provisions."[25]

93.     Facebook's Terms of Service states that "you agree that [any claim] will be resolved exclusively in the U.S. District Court for the Northern District of California . . . You also agree to submit to the personal jurisdiction of [this] court[] for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions."[26]

94.     By choosing California law for the resolution of disputes, Defendants concede that is it appropriate for this Court to apply California law to this action.

---

[25] *Terms of Use*, INSTAGRAM, https://help.instagram.com/581066165581870/ (last visited Aug. 11, 2020).

[26] *Terms of Service*, FACEBOOK, https://www.facebook.com/terms.php (last visited Aug. 11, 2020.

95.     Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

96.     Defendants' United States headquarters and principal place of business is located in California. Defendants also own property and conduct substantial business in California, and therefore California has an interest in regulating Defendants' conduct under its laws. Defendants' decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

97.     California is also the state from which Defendants' alleged misconduct emanated. This conduct similarly injured and affected Plaintiff and all other Class members.

98.     The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Class)**

99.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

100.    A plaintiff asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

101.    Defendants intruded upon Plaintiff's and Class members' seclusion by (1) secretly monitoring users through their smartphone cameras, including in their own home and during private

1    and intimate moments, in which they had a reasonable expectation of privacy; and (2) in a manner

2    that was highly offensive to Plaintiff and Class members, would be highly offensive to a reasonable

3    person, and was an egregious violation of social norms.

4         102.    Defendants' business practice of secretly monitoring Plaintiff and Class members

5    through their smartphone camera without their consent constituted an intentional intrusion upon

6    Plaintiff's and Class members' solitude or seclusion in that Defendants effectively placed

7    themselves in the middle of conversations and intimate moments to which it was not invited,

8    welcomed, or authorized.

9         103.    The surreptitious monitoring and spying on millions of individuals was highly

10   offensive because it violated expectations of privacy that have been established by general social

11   norms. Privacy polls and studies consistently show that the overwhelming majority of Americans

12   believe one of the most important privacy rights is the need for an individual's affirmative consent

13   before personal information is shared. For example, one study by *Pew Research* found that 93% of

14   Americans believe its important to be in control of who can get information about them.

15        104.    Defendants' conduct would be highly offensive to a reasonable person in that it

16   violated federal and state laws designed to protect individual privacy, in addition to social norms.

17        105.    Defendants intentionally engaged in the misconduct alleged herein for its own

18   financial benefit, such as collecting valuable (and private) sensitive information on its users for

19   marketing and advertisement purposes.

20        106.    As a result of Defendants' actions, Plaintiff and Class members have suffered harm

21   and injury, including, but not limited to, an invasion of their privacy rights.

22        107.    Unwanted monitoring and collection of sensitive personal information in violation

23   of the law or social norms is actionable under California law.

24        108.    Plaintiff and Class members have been damaged as a direct and proximate result of

25   Defendants' invasion of their privacy and are entitled to just compensation.

26        109.    Plaintiff and Class members are entitled to appropriate relief, including

27   compensatory damages for the harm to their privacy and dignitary interests, loss of valuable rights

28

1  and protections, heightened risk of future invasions of privacy, and mental and emotional distress.

2      110.    Plaintiff and Class members are entitled to an order requiring Defendants to disgorge

3  profits or other benefits that Defendants acquired as a result of its invasions of privacy.

4      111.    Plaintiff and Class members are entitled to punitive damages resulting from the

5  malicious, willful and intentional nature of Defendants' actions, directed at injuring Plaintiff and

6  Class members in conscious disregard of their rights. Such damages are needed to deter Defendants

7  from engaging in such conduct in the future.

8      112.    Plaintiff also seeks such other relief as the Court may deem just and proper.

9                          **SECOND CLAIM FOR RELIEF**
                          **Violation of Cal. Civ. Code § 1709**
10                          **(On Behalf of Plaintiff and the Class)**

11     113.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with

12  the same force and effect as if fully restated herein.

13     114.    California Civil Code § 1709 provides that "[o]ne who willfully deceives another

14  with intent to induce him to alter his position to his injury or risk, is liable for any damage which he

15  thereby suffers." A defendant violates § 1709 if (i) it had a duty to disclose a material fact to the

16  plaintiff; (ii) it intentionally concealed that fact with intent to defraud; (iii) plaintiff was unaware of

17  that fact (and would have acted differently if he were aware), and (iv) plaintiff sustained some

18  damage as a result.

19     115.    California Civil Code § 1710 defines "deceit" as "1. [t]he suggestion, as a fact, of

20  that which is not true, by one who does not believe it to be true; 2. [t]he assertion, as a fact, of that

21  which is not true, by one who has no reasonable ground for believing it to be true; 3. [t]he

22  suppression of a fact, by one who is bound to disclose it, or who gives information of other facts

23  which are likely to mislead for want of communication of that fact; or, 4. [a] promise, made without

24  any intention of performing it."

25     116.    Defendants violated § 1709 by failing to disclose and/or omitting that it accessed and

26  monitored users through their smartphone camera while users were not interacting with the

27  Instagram camera feature.

28
                                   20

117.    Defendants had a duty to disclose this information because the way in which Defendants' access and use the camera within Instagram is in their exclusive control.

118.    This information was material because Plaintiff and Class members would not have used Instagram if they had known they were secretly monitored by Defendants.

119.    Plaintiff and Class members had no way of discovering that Defendants access users' cameras when they are not activated by the individual prior to the update to iOS that revealed this material information.

120.    Additionally, Defendants' partial representations about when they accessed users' cameras created an obligation to disclose the true nature of that interaction. Specifically, Defendants represented to Plaintiff and Class members in their Data Policy that they would only access and collect camera data while users were engaging with the Instagram camera feature. This omitted that Defendants also access the user's camera when they are in other parts of the app, such as scrolling through their feed. Defendant's failure to disclose this information to Plaintiff and Class members concealed the full extent to which they access users' smartphone cameras, including when the camera is not activated by the user.

121.    Defendants actively concealed that they would access Plaintiff's and Class members' smartphone cameras while the Instagram camera feature was not in use with the intent to induce Plaintiff and Class members to alter their position to their injury or risk; namely, to download and/or use Instagram.

122.    Defendants willfully engaged in these acts of deceit so that they could have access to, and monitor, Plaintiff's and Class members' sensitive and confidential activity for their own personal benefit, including collecting valuable marketing information.

123.    Plaintiffs suffered injury as a direct result of Defendants' deceit, including an invasion of their right to privacy. Additionally, Plaintiffs were injured because Defendants obtained their personal and highly confidential information by accessing their smartphone camera without permission. This information is highly valuable and conferred a direct benefit to Defendants, such as boosting their advertisement revenue, to Plaintiffs detriment.

124.   As a result, Plaintiff and Class members seek recovery of their resulting damages, including economic damages, restitution, and disgorgement, as well as punitive damages and such other relief as the Court may deem just and proper.

**THIRD CLAIM FOR RELIEF**
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Civ. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

125.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

126.   Defendants' conduct as alleged herein constitutes unlawful, unfair, and/or fraudulent business acts or practices as prohibited by the UCL.

127.   Defendants engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Defendants unlawfully monitored and spied on Plaintiff and Class members through their smartphone camera without consent in violation of the California common law, California Constitution, the Federal Wiretap Act, California Civil Code § 1709, the California Consumer Privacy Act, and California Penal Code §§ 631-32.

128.   "Unfair" acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided.   Defendants' conduct is unfair under each of these tests.

129.   Defendants engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Defendants failed to disclose during the Class Period that it was monitoring users while they were not interacting with the Instagram camera feature. *See* Cal. Bus. & Prof. Code § 17200.

130.    Defendants had a duty to disclose this information because only Defendants had knowledge that they were accessing Plaintiff and Class members' cameras while the Instagram camera feature was not in use.

131.    This information is material because Plaintiff and Class members would not have downloaded or used the Instagram app if they had known Defendants would secretly monitor and spy on them through their camera.

132.    In the absence of Defendants' disclosure, Plaintiff and Class members had no way of discovering the material facts about Defendants' access to their smartphone camera prior to the update to iOS.

133.    Additionally, Defendants' partial representations about when they accessed users' cameras created a duty to disclose the full extent of that interaction. Specifically, Defendants represented to Plaintiff and Class members in their Data Policy that they only access and collect camera data while users are interacting with the Instagram camera feature. This omitted that Defendants also access the user's camera when users are engaging with other parts of the app, such as when a user is scrolling through their feed. Defendant's failure to disclose this information to Plaintiff and Class members concealed the full extent to which they access users' smartphone cameras, including when the camera is not activated by the user.

134.    Defendants actively concealed that they would access Plaintiff's and Class members' smartphone cameras while the Instagram camera feature was not in use with the intent to induce Plaintiff and Class members to alter their position to their detriment; specifically, to join Instagram and/or remain active users of their social media platform.

135.    Defendants' conduct violates the policies of the statutes referenced above. Moreover, Defendants' conduct is contrary to public policy, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. Among other things, it is contrary to the public policy in favor of protecting private information.

136.    The gravity of the harm of Defendants' secretly monitoring Plaintiff and Class members is significant and there is no corresponding benefit resulting from such conduct. Finally,

because Plaintiff and Class Members were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

137.    Defendants' conduct, as described herein, constitutes a fraudulent business practice within the meaning of the UCL. Defendants have been able to obtain private and confidential information by spying on users through their smartphone camera, all while deceiving Plaintiff and Class members into believing this type of information was private and not monitored or otherwise misused by Defendants.

138.    Plaintiffs suffered injury as a direct result of Defendants' deceit, including an invasion of their right to privacy. Additionally, Plaintiffs were injured because Defendants obtained their personal and highly confidential information by accessing their smartphone camera without permission. This information is highly valuable and conferred a direct benefit to Defendants, such as boosting their advertisement revenue, to Plaintiffs detriment.

139.    Plaintiff and Class members have been harmed as a result of Defendants' conduct in violation of the UCL and seek restitution on behalf of themselves and Class members. Additionally, Plaintiff individually and on behalf of the Class, seek an injunction enjoining Defendants from engaging in the unlawful conduct alleged in this claim and requiring Defendants to cease further collection of Plaintiff's and Class members' sensitive personal data, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Wiretap Act, 18 U.S.C. § 2510 *et seq.***
**Title 1 of the Electronic Communications Privacy Act ("ECPA")**
**(On Behalf of Plaintiff and the Class)**

140.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

141.    The Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, prohibits the interception of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication. The statute confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this

24

chapter." 18 U.S.C. § 2520(a).

142. "Oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]" 18 U.S.C. § 2510(2).

143. "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2510(12).

144. "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

145. "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

146. "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

147. Plaintiff and Class members are persons as defined under § 2510(6) of the Act.

148. Facebook and Instagram, as corporations, are persons as defined under 18 U.S.C. §2510(6).

149. Instagram's social media application is a device for purposes of the Wiretap Act because it is software used to intercept oral and electronic communication.

150. Plaintiff's and Class members' private and confidential oral communications that were intercepted in real time by Defendants when Instagram activated their cameras without being prompted by the user, are "oral communications" within the meaning of 18 U.S.C. § 2510(2).

151. Plaintiff and Class members reasonably expected that Instagram was not intercepting, recording, or disclosing their oral communications unless Instagram's camera feature

was manually activated based on: (i) the context in which these private oral communications occurred, namely Plaintiff's and Class members' homes and other private areas, to which access of all other persons is prohibited absent Plaintiff's and Class members' consent; (ii) a general understanding of how apps, such as, Instagram are supposed to function and based on Instagram's assurances; (iii) Defendants' status as a party who was not an intended party to or recipient of Plaintiff's and Class members' private and confidential communications.

152.    Pursuant to 18 U.S.C. § 2511(1)(a), Instagram and Facebook, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with the Instagram application, intentionally intercepted, intercepts, or endeavored to intercept, the content of oral communications made by Plaintiff and Class Members without obtaining actual consent from any authorized party to the oral communication.

153.    Plaintiff's and the Class members' private and confidential oral communications were intercepted during transmission, simultaneous with the communications' arrival, and/or within a second of the communications' arrival without their consent and for the unlawful and/or wrongful purpose of monetizing their private information, including by using their private information to obtain lucrative marketing research, without Plaintiff's and Class members' consent, and for the tortious purpose of committing unfair business practices.

154.    Interception of Plaintiff's and Class members' private and confidential oral communications without their consent occurs whenever users have the Instagram app open on their smartphone, including when users are not engaging with the Instagram camera feature.

155.    Plaintiff and Class members could not have, and did not, provide consent to interception of their oral communications because such consent could only apply in instances when users engage with the Instagram camera feature, and not otherwise.

156.    The practices complained of in this Count fall outside the scope of Defendants' ordinary course of business because they violate Defendants' own policies and public assurances and are in contradiction to the generally understood manner in which social media apps are supposed to function. As such, the surreptitious monitoring of Plaintiff's and Class members' oral

communications does not facilitate the transmission of the oral communication at issue nor is incidental to such transmission of such communication.

157.   Defendants' actions were at all relevant times knowing, willful, and intentional, particularly because Facebook has already come under scrutiny for this same exact conduct less than a year ago. Both times, Defendants conduct has only been disclosed because of updates to Apple's operating software.

158.   Defendants intercepted Plaintiff's and Class members' oral communications in reckless disregard for Plaintiff's and Class members' privacy rights for its own financial benefit, i.e., to obtain lucrative and confidential marketing research it could not otherwise obtain.

159.   As a result, Plaintiff and Class members have suffered harm and injury due to the interception and transmission of private and personal, confidential, and sensitive communications.

160.   Pursuant to 18 U.S.C. § 2520, Plaintiff and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Google as a result of the violation or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

**FIFTH CLAIM FOR RELIEF**
**Violation of the California Invasion of Privacy Act**
**Cal. Penal Code § 631(a)**
**(On Behalf of Plaintiff and the Class)**

161.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

162.   Cal. Penal Code § 630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting

from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

163.   Cal. Penal Code § 631(a) prohibits the use of "any machine, instrument, or contrivance, or . . . any other manner" to "intentionally tap[], or make[] unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument" *or* to "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state."

164.   Cal. Penal Code § 631(a) further prohibits the "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."

165.   Pursuant to Cal. Penal Code § 7, Instagram and Facebook, as corporations, are a "person[s]."

166.   Smartphones constitute a "telegraph or telephone wire, line, cable, or instrument" within the meaning of Cal. Penal Code § 631(a) because they transmit "wire communication" defined in Cal. Penal Code § 629.51 as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . ." *See* Cal. Penal Code § 629.51(a)(1).

167.   Pursuant to Cal. Penal Code § 629.51(a)(4) "aural transfer means a transfer containing the human voice at any point between and including the point of origin and the point of reception." *See* Cal. Penal Code § 629.51(a)(4).

168.   Smartphones constitute "telegraph or telephone wire, line, cable, or instrument" within the meaning of Cal. Penal Code § 631(a) because they transmit "electronic communication" defined in Cal. Penal Code § 629.51(a)(2) as "transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photooptical system…" *See* Cal. Penal Code § 629.51(a)(2).

169.    Defendants Instagram and Facebook acted in a manner to intentionally make an unauthorized connection with Plaintiff and Class members smartphones in direct violation of Cal. Penal Code § 631(a). Specifically, Defendants accessed and monitored users through their smartphone camera without consent and when the Instagram app camera feature was not in use.

170.    Plaintiff and Class Members reasonably expected, based on a general understanding of how social media applications are supposed to function and Defendants' own assurances, that Defendants were not accessing, monitoring, or learning the contents of their private communications unless Plaintiff and Class members were interacting with Instagram's camera feature.

171.    Defendants were not an intended party or recipient of Plaintiff's or Class members' confidential communications.

172.    Plaintiff and Class members could not have provided consent or authorization because such consent or authorization could only apply in situations where they were interacting with Instagram's camera feature, and not otherwise.

173.    The private electronic and aural communication that Instagram and Facebook intercepted originated from Plaintiff's and Class members' smartphones. The electronic and aural communications that Defendants intercepted were sent to Defendants' servers, which are, upon information and knowledge, located in the State of California, and were therefore, received "at any place within the state [of California]" within the meaning of Cal. Penal Code § 631(a).

174.    Defendants' acts in violation of CIPA occurred in the State of California because those acts resulted from business decisions, practices, and operating policies that Google developed, implemented, and utilized in the State of California.

175.    Defendants' acts and practices complained of herein were for the purpose of acquiring and using the content of Plaintiff's and Class members' communications to gain lucrative and confidential market research it could not otherwise obtain in violation of Cal. Penal Code § 631.

176.    Defendants' actions were at all relevant times knowing, willful, and intentional. Specifically, Defendants have previously admitted to substantially the same conduct with respect to the Facebook application and would have resolved the issue across all Facebook products, including

Instagram, were this conduct an accident given its egregious nature. Defendants' actions were done in reckless disregard for Plaintiff's and Class members' privacy rights.

177.   As a result of Defendants' violations of CIPA, Plaintiff and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

178.   Defendants are able, and the Court should require them, to implement functionality sufficient to prevent further unauthorized interception of Plaintiff's and Class members' communications in the future.

179.   Plaintiff, individually and on behalf of the Class, seeks: (1) an injunction enjoining Plaintiff, individually and on behalf of the Class, seek: (1) an injunction enjoining Defendants from engaging in the unlawful conduct alleged in this claim and requiring Defendants to cease further collection of Plaintiff's and Class members' sensitive personal data, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; (2) damages of $5,000 per violation under Cal. Penal Code § 637.2; and (3) costs and reasonable attorneys' fees under Cal. Civ. Proc. Code § 1021.5.

### SIXTH CLAIM FOR RELIEF
### Violation of the California Invasion of Privacy Act
### Cal. Penal Code § 632
### (On Behalf of Plaintiff and the Class)

180.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

181.   Cal. Penal Code § 632 prohibits eavesdropping upon or recording of any confidential communication, including those occurring among the parties in the presence of one another or by means of a telephone, telegraph or other device, through the use of an electronic amplifying or recording device without the consent of all parties to the communication.

182.   Pursuant to Cal. Penal Code § 7 and § 632(b), Instagram and Facebook, as corporations, are a "person[s]."

183.   Facebook and Instagram eavesdrop and monitored Plaintiff's and Class members' confidential communications and activity through their smartphone camera while users were not

engaging with Instagram's camera feature. Facebook and Instagram eavesdropped on users without their consent.

184.    Plaintiff and Class members could not have provided consent or authorization because such consent or authorization could only apply to instances where they were interacting with Instagram's camera feature, and not otherwise.

185.    By spying and monitoring on Plaintiff and Class members without their consent, i.e., while users were not engaging with Instagram's camera feature, Defendants "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device" to "eavesdrop upon" Plaintiff and Class members in violation of Cal. Penal Code § 632.

186.    Defendants' acts and practices complained of herein were for the purpose of acquiring and using the content of Plaintiff's and Class members' communications to gain lucrative and confidential market research it could not otherwise obtain in violation of Cal. Penal Code § 631.

187.    Defendants' actions were at all relevant times knowing, willful, and intentional. Specifically, Defendants have previously admitted to substantially the same conduct with respect to the Facebook application and would have resolved the issue across all Facebook products, including Instagram, were this conduct an accident given its egregious nature. Defendants' actions were done in reckless disregard for Plaintiff's and Class members' privacy rights.

188.    As a result of Defendants' violations of CIPA, Plaintiff and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

189.    Defendants are able, and the Court should require them, to implement functionality sufficient to prevent further unauthorized interception of Plaintiff's and Class members' communications in the future.

190.    Plaintiff, individually and on behalf of the Class, seek: (1) an injunction enjoining Defendants from engaging in the unlawful conduct alleged in this claim and requiring Defendants to cease further collection of Plaintiff's and Class members' sensitive personal data, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and

obtaining adequately informed consent; (2) damages of $5,000 per violation under Cal. Penal Code § 637.2; and (3) costs and reasonable attorneys' fees under Cal. Civ. Proc. Code § 1021.5.

**SEVENTH CLAIM FOR RELIEF**
**Request for Relief Under the Declaratory Judgment Act**
**28 U.S.C. § 2201, *et seq.***
**(On Behalf of Plaintiff and the Class)**

191.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

192.   Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

193.   An actual controversy has arisen in the wake of Defendants' monitoring users through their smartphone without their consent as alleged herein in violation of Defendants' common law and statutory duties.

194.   Plaintiff continues to suffer injury and damages as described herein as Defendants continue to monitor Plaintiff's and Class members' through their smartphone camera without their consent.

195.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.   Defendants continued monitoring or otherwise spying on Plaintiff's and Class members constitutes intrusion upon seclusion under the common law.

   b.   Defendants monitoring or otherwise spying on Plaintiff's and Class members is considered "unlawful" conduct pursuant to California Civil Code § 17200, *et seq*.

   c.   Defendants' failure to disclose and/or concealment of the unlawful conduct,

described above, constitutes a violation of California Civil Code § 1709.

d.      Defendants' interception of Plaintiff's and Class members communications in real-time constitutes a violation of 18 U.S.C. § 2510.

e.      Defendants' unauthorized connection with Plaintiff's and Class members smartphone devices violated California Penal Code § 631(a).

f.      Defendants' eavesdropping, monitoring, and otherwise spying on Plaintiffs and Class members violated California Penal Code § 632.

g.      Defendants' failure to disclose their data collection practices, including when the Instagram camera feature is not in use, constitutes a violation of the California Consumer Privacy Act.

h.      Defendants' unlawful conduct continues to cause Plaintiff and Class members harm.

196.    The Court should also issue corresponding injunctive relief, including but not limited to enjoining Defendants from engaging in the unlawful conduct alleged in this claim and requiring Defendants to cease further monitoring of Plaintiff and Class members, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

197.    If an injunction is not issued, Plaintiff and Class members will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct.

198.    Federal and state laws prohibit, among other things, the unlawful monitoring of users without consent. California specifically recognizes privacy as a fundamental right. Given the secretive nature of Defendants' conduct, the risk of continued violations of federal and California law is real, immediate, and substantial. Plaintiff do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiff will be forced to bring multiple lawsuits to rectify the same conduct.

199.    The hardships to Plaintiff and Class members if an injunction is not issued exceeds the hardships to Defendants if an injunction is issued. On the other hand, the cost to Defendants of complying with an injunction by complying with federal and California law and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

200.    Issuance of the requests injunction will serve the public interest by preventing ongoing monitoring, collection, and misuse of sensitive personal data without consent, thus eliminating the injuries that would result to Plaintiff and the Class, and the potentially hundreds of thousands of consumers who purchased Android Devices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the proposed Class respectfully requests that the Court enter an order:

A.    Certifying the Class and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

B.    Finding that Defendants' conduct was unlawful as alleged herein;

C.    Awarding such injunctive and other equitable relief as the Court deems just and proper;

D.    Awarding Plaintiff and the Class members statutory, actual, compensatory, consequential, punitive, and nominal damages;

E.    Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

F.    Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

G.    Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

1

2   Dated:  September 17, 2020                    /s/ Mark N. Todzo
                                                Mark N. Todzo (California Bar No. 168389)
3                                               **LEXINGTON LAW GROUP**
                                                503 Divisadero Street
4                                               San Francisco, CA  94117
                                                Telephone: 415-913-7800
5                                               Facsimile:  415-759-4112
                                                mtodzo@lexlawgroup.com
6

7                                               Christian Levis (*pro hac vice* forthcoming)
                                                Amanda Fiorilla (*pro hac vice* forthcoming)
8                                               **LOWEY DANNENBERG, P.C.**
                                                44 South Broadway, Suite 1100
9                                               White Plains, NY 10601
                                                Telephone: (914) 997-0500
10                                              Facsimile: (914) 997-0035
                                                clevis@lowey.com
11                                              afiorilla@lowey.com

12
                                                Anthony M. Christina (*pro hac vice* forthcoming)
13                                              **LOWEY DANNENBERG, P.C.**
                                                One Tower Bridge
14                                              100 Front Street, Suite 520
                                                West Conshohocken, PA 19428
15                                              Telephone: (215) 399-4770
                                                Facsimile: (914) 997-0035
16                                              achristina@lowey.com

17
                                                *Attorneys for Plaintiff Brittany Conditi and the*
18                                              *Proposed Class*

19

20

21

22

23

24

25

26

27

28

---

35